**Dorothy THOMPSON, Plaintiff, Appellant,**

**v.**

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant, Appellee.**

**No. 76–1507.**

United States Court of Appeals, First Circuit.

Argued March 7, 1977.

Decided June 15, 1977.

Daniel S. Manning, Dorchester, Mass., for appellant.

William E. Hughes, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before MOORE,* ALDRICH and CAMPBELL, Circuit Judges.

* Of the Second Circuit, sitting by designation.

LEVIN H. CAMPBELL, Circuit Judge.

Dorothy Thompson appeals from a decision of the Secretary of Health, Education and Welfare denying her application for disability benefits under the Social Security Act, 42 U.S.C. § 423. The district court granted summary judgment for the Secretary and we affirm.

The procedural setting and factual background are set out fully in the district court's memorandum and order of September 7, 1976 and we repeat here only what is necessary to our decision.

Claimant's application for disability benefits based on spondylolysis (a degenerative change of a vertebra usually caused by arthritis) and diabetes, was denied initially and upon reconsideration. She thereafter requested and received a hearing before an Administrative Law Judge (ALJ) who again denied benefits. The Appeals Council affirmed the ALJ. Mrs. Thompson then took her case to the district court where summary judgment for the Secretary was granted on the ground that the decision of the ALJ was supported by substantial evidence, see 42 U.S.C. § 405(g). We agree.

On appeal Mrs. Thompson focuses almost entirely on the claim that she is totally disabled by pain due to a back condition (spondylolysis), or possibly by her massive obesity.[1] She attacks the ALJ's finding that her claim of pain was not credible, arguing that the finding was based on an erroneous legal standard. She quotes language from the ALJ's decision which she says is tantamount to establishing a "rule of law" which presumes that obese people do not suffer pain. Taken in context, however, we derive from the statements no such meaning. Although perhaps unhappily phrased in one or two particulars, the ALJ's findings on pain seem to us overall to be reasonable and nonprejudicial.[2] Moreover, his ultimate conclusions on the subject are amply supported by the medical evidence and claimant's testimony.

1. Although Mrs. Thompson did not, either on her application for benefits or during her testimony before the ALJ, claim that her inability to return to work was due in any way to her obesity—she had in fact been very overweight throughout her working life—she argues on appeal that the ALJ should have made findings concerning the relationship between her obesity and pain because at least one doctor thought that most of the back pain she experienced was due to obesity and not necessarily to the spondylolysis. We note, as did the ALJ, that the same doctor suggested as beneficial, weight reduction, a supervised exercise program and moderate physical activity. Moreover, he categorized Mrs. Thompson's complaints as being in the nuisance category. The ALJ considered this medical opinion in concluding that Mrs. Thompson's pain was not disabling. Any argument that he was required to do more is without merit.

2. The claimant's complaints of pain have been carefully considered. It is well known that pain is a subjective symptom that is not measurable and it is recognized that there are many disorders in which the common symbol—pain—is constant, unremitting and wholly irresponsive to therapeutic measures. Generally, when an individual has suffered severe pain for a long time, there are observable signs such as drawn features and, in most cases, sharp weight loss and muscle atrophy due to disuse for the purpose of avoiding discomfort; as well as a medical history replete with efforts to alleviate pain. In the instant case, there are no such significant signs. The claimant has no muscle atrophy, has maintained good weight for her height (in fact, the claimant is described as obese), and has the outward appearance of good health. As of the time of the hearing, the claimant was taking only Anacin for her pain, was able to do her housework, visit relatives, use public transportation and walk around the neighborhood. This Judge does not mean to imply that the claimant is symptom-free, but a review of the evidence in this case persuades the Judge that claimant's complaints of pain and incapacitation are not credible when viewed in the light of the medical findings and the claimant's own testimony."

Mrs. Thompson relies heavily on *Brittingham v. Weinberger*, 408 F.Supp. 606, 612–13 & n.5 (E.D.Pa.1976), where the district court held that language almost identical to some of that quoted above was "improper" and remanded to the Secretary because the ALJ had failed to give proper consideration to the claimant's subjective complaints of pain. Without expressing an opinion on whether we agree in all respects with the district court in *Brittingham*, we note that this case is distinguishable. Here the ALJ did consider the question of pain and did make a finding supported by substantial evidence in the record that the claim of total disability because of pain was not credible.

Mrs. Thompson next argues that *Miranda v. Secretary*, 514 F.2d 996 (1st Cir. 1975) requires that in cases where there is evidence of an abnormality which produces some pain, the Secretary must attempt to make a clinical evaluation of "the extent and seriousness of the discomfort and its relationship, if any to [an individual's] capacity for work", *id.* at 1000. But *Miranda* does not hold that in every instance where pain is an issue the Secretary must arrange a separate clinical evaluation. Much obviously depends on the nature of the case, the reasonableness of the claim, and the adequacy of the existing record. In *Miranda* the Secretary was seeking to terminate benefits which had been granted on account of a back injury. The medical evidence and the ALJ's findings at the termination hearing virtually ignored claimant's main contention that he remained in such pain that he could not work under any condition. We held that, in all circumstances, the Secretary's evidence and inquiry had been incomplete for purposes of terminating an already established disability.

Here, the claimant bore the initial responsibility of establishing disability, and far from claiming pain as the chief element of her alleged disability, Mrs. Thompson testified that dizziness was the reason she could not work. Even so, unlike in *Miranda*, the ALJ made a careful evaluation both of Mrs. Thompson's testimony and the medical evidence before finally concluding that her claim of disabling pain was not credible. We find nothing unreasonable or incomplete about the Secretary's inquiry here.

Claimant, without making a clear argument in support of her position, also attacks the ALJ's finding that dizziness was not disabling. There is no clinical evidence, psychological or physiological, explaining Mrs. Thompson's problems with dizziness. There is a handwritten note on hospital stationery which indicates middle ear disease being treated with dramamine, but this purported diagnosis is not corroborated by any of the other numerous write-ups in medical records from 1965 onward nor did Mrs. Thompson mention it in her testimony.

Although she is diabetic, and asserts that her dizziness is caused by that condition, the medical evidence is that Mrs. Thompson is being treated successfully with oral medication.

■ On such a meagre showing, and particularly in the absence of meaningful medical evidence, the ALJ was entitled to decide as he did. *See generally Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir. 1975). This court's observation in *Miranda* that "the Secretary is not at the mercy of every claimant's subjective assertions of pain", 514 F.2d at 1000, applies equally well to subjective claims of dizziness. Claimant must show that her impairment is "medically determinable", 42 U.S.C. § 423(d)(1)(A), and only in a rare case can she do this without medical evidence. *Ramirez v. Secretary*, 528 F.2d 902, 903 (1st Cir. 1976). *See Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971); *Peterson v. Gardner*, 391 F.2d 208, 209–10 (2d Cir. 1968).

Finally, Mrs. Thompson contends that because the ALJ stated that she could work "if she were so motivated", he was under a duty to make findings concerning the relationship between so much of the claims of dizziness and pain as were subjective and possible psychological impairment. She points out that the record discloses that claimant had been advised to go to work or see a psychiatrist and that one doctor considered her "queer". She points also to the results of the 1969 evaluation in which a diagnosis of "depressive reaction of moderate severity with hysterical components in a compulsive personality" was made. But the ALJ found that neither dizziness nor pain was totally disabling within the meaning of the Social Security Act and his belief that Mrs. Thompson could work if she wanted to was not unreasonable on the record. While in *Miranda* we indicated that the Secretary must make a reasonable inquiry into a claim of disability, *see* 514 F.2d at 998, we did not mean to suggest that he must go to inordinate lengths to develop a claimant's case.

*Affirmed.*