**James T. CASHMAN, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.[1]**

**Civ. A. No. 89–40065–XX.**

United States District Court,
D. Massachusetts.

March 31, 1993.

---

**1.** Donna E. Shalala succeeded Louis W. Sullivan, M.D., as Secretary of Health and Human Services on January 21, 1993. She is therefore automatically substituted as the Defendant in this action. Fed.R.Civ.P. 25(d)(1).

Elaine M. Eliopoulos, Ellis & Ellis, Worchester, MA, for Cashman.

Annette Ford, Asst. U.S. Atty., Boston, MA, for defendant.

**MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE SECRETARY**

DAVID S. NELSON, Senior District Judge.

## I. *INTRODUCTION*

This matter is before the Court on Plaintiff's motion for an order reversing the final decision of the Secretary of Health and Human Services ("Secretary") which denied Plaintiff's application for a period of disability and disability insurance benefits under 42 U.S.C.A. § 416(i)(1) (West 1991) and 42 U.S.C.A. § 423(d)(1) (West 1991). The Secretary based her decision on a finding that Plaintiff was not "disabled" within the meaning of the Social Security Act ("Act") prior to March 31, 1984, the last date on which Mr. Cashman met the requirements for insured status. For the reasons stated below, this

**2.** "Tr." refers to the Transcript of Record.

Court denies Plaintiff's motion and affirms the decision of the Secretary.

## II. *FACTUAL BACKGROUND*

Plaintiff was born on June 7, 1951, and is presently a resident of Otter River, Massachusetts. Tr. at 37.[2] He is married and lives with his wife, Diana Cashman, and four minor children. Tr. at 48–49. Although Mr. Cashman's formal education ended with the ninth grade, he has received extensive on-the-job vocational training as an automobile mechanic. Tr. at 37–38. In addition, Mr. Cashman has been employed as a forklift driver and auto service manager. Tr. 91, 95–100.

On January 8, 1980, Plaintiff was injured when he fell from a ladder while hanging a service sign for his employer, Woolco Automotive in Shreveport, Louisiana. Tr. at 38. When the ladder broke, Mr. Cashman fell backwards and landed on an iron railing. Tr. at 38. Plaintiff was taken to an area hospital where he remained for approximately three weeks. Tr. at 39, 107. Mr. Cashman was diagnosed as having suffered an acute musculoligmental strain of his back. Tr. at 107, 108.

Since the time of his accident, Mr. Cashman has been treated by several physicians for symptoms related to his back injury. The relevant medical facts are discussed *infra*.

## III. *PROCEDURAL HISTORY*

On March 3, 1982, Mr. Cashman filed for a period of disability and disability insurance ("Title II") benefits based on the injuries he sustained in the fall from the ladder on January 8, 1980. The application was initially denied on or about May 4, 1982. Since Plaintiff failed to pursue an administrative appeal, the initial determination became the final and binding decision of the Secretary. 20 C.F.R. 404.905 (1992).

On January 29, 1987, Plaintiff filed a new application for Title II benefits and Supplemental Security Income ("SSI") benefits alleging that he has been unable to work since January 8, 1980. The application was denied

initially and on reconsideration. Plaintiff then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a *de novo* review of Plaintiff's case and found that while Mr. Cashman has been disabled since January 29, 1987, he was not under a disability on or before March 31, 1984, the date Plaintiff's insured status expired.[3] Accordingly, the ALJ concluded that Mr. Cashman was entitled to SSI benefits pursuant to 42 U.S.C.A. § 1382c(a)(3)(A) (West 1992), but he was not eligible for Title II benefits under 42 U.S.C.A. § 416(i)(1) and 42 U.S.C.A. § 423(d)(1).[4] On January 27, 1989, Plaintiff requested that the Appeals Council review the ALJ's decision in light of additional medical evidence which was not available at the administrative hearing. On April 28, 1989, the Appeals Council upheld the ALJ's decision, making it the final determination of the Secretary. 20 C.F.R. 404.905.

## IV. STANDARD OF REVIEW

■ Judicial review by the district court of Social Security disability benefit determinations is provided under 42 U.S.C.A. § 405(g) (West 1991). The statute states, in pertinent part that:

> [a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment af-

firming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

However, the district court does not sit to make a *de novo* review of the record. *Lizotte v. Secretary of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir.1981). Rather, this Court has a limited role in reviewing the Secretary's denial of Social Security benefits. *See Reyes Robles v. Finch*, 409 F.2d 84, 86 (1st Cir.1969). The district court must affirm the Secretary's findings if they are supported by substantial evidence. 42 U.S.C.A. § 405(g) ("[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...."); *see also Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (per curiam) (review is limited to determining whether the findings of the Secretary are supported by substantial evidence on the record as a whole); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). Even if the record could arguably justify a different conclusion, the decision of the Secretary must be affirmed if it is supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987) (per curiam), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988) (citing *Lizotte*, 654 F.2d at 128); *Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir.1987).

In *Richardson v. Perales*, the United States Supreme Court defined "substantial evidence" as evidence which is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 402 U.S.

---

3. The ALJ in the present matter concluded that:

> the record does not contain "new and material" evidence which constitutes "good cause" within the meaning of Section 404.988 and 989 and Sections 416.1488 and 1489 for reopening and revising the initial determination that the claimant was not "disabled" based on that prior application; moreover, that determination has become administratively final because his second application was filed more than four years after the initial determination on his prior application.

Tr. at 16. Therefore, since Mr. Cashman has not attacked the previous determination on constitu-

tional grounds, nor has the Secretary either actually or constructively reopened the previous application, this Court will not address it. *See Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977); *Torres v. Secretary of Health & Human Servs.*, 845 F.2d 1136, 1139 (1st Cir.1988); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 795 (1st Cir.1987).

4. Although Plaintiff asks this Court to reverse the Secretary's denial of disability insurance benefits, he does not seek judicial review of the Secretary's decision to grant Supplemental Security Income benefits.

389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

■ Thus, if, after reviewing the evidence in the record as a whole, a reasonable mind could accept the Secretary's findings as adequate to support her conclusion, the district court must affirm. *Consolidated Edison Co.*, 305 U.S. at 229, 59 S.Ct. at 216–17; *Rodriguez*, 647 F.2d at 222; *Ortiz*, 955 F.2d at 769; *Tsarelka v. Secretary of Health & Human Servs.*, 842 F.2d 529, 534 (1st Cir.1988).

## V. DISCUSSION

In light of the applicable standard of review, there is but one question before this Court: Is there substantial evidence in the record to support the Secretary's finding that Mr. Cashman was not disabled within the meaning of the Act prior to March 31, 1984? Plaintiff argues that the "great weight" of the medical evidence, in addition to his own and his wife's testimony, supports a conclusion that he was disabled within the meaning of the Act as a result of the accident on January 8, 1980.

### a. Disability Requirement

■ A claimant must be "disabled" within the meaning of the Act before he is entitled to receive social security benefits. The Act defines a disability as the:

inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C.A. §§ 416(i)(1), 423(d)(1)(A). In addition,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. § 423(d)(2)(A).

As the statute indicates, it is not enough to show that the claimant is precluded from returning to his previous occupation; he must show that he is precluded from engaging in any substantial gainful activity because of his impairment(s). "Since 1978, the Secretary of Health and Human Services has implemented this definition of disability by applying a five-step sequential inquiry into whether or not an applicant for benefits should be considered 'disabled' and thus eligible for benefits." *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986) (citation omitted).[5]

---

**5.** In determining whether a claimant is "disabled" under the Act, the Secretary is required to engage in a five step analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (1992). Step One determines whether the claimant is presently engaged in "substantial gainful activity." If he is, then disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If, however, the claimant is not engaged in substantial gainful activity, then the Secretary must determine whether the claimant has a medically severe impairment or combination of impairments. If claimant is not significantly limited in his physical or mental ability to do basic work activities, then he does not suffer from a medically severe impairment, and is therefore not entitled to benefits. In arriving at this determination, no consideration is given to the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, the claimant does suffer

from a severe impairment, then the evaluation proceeds to the third step—is the impairment one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, App. 1 (1992). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation advances to Step Four which determines whether the impairment prevents the claimant from performing work that he has previously performed. If it does not, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is unable to engage in his previous work, Step Five determines whether he is able to perform other work in the national economy in

### b. Considerations of Pain

■ When approaching the issue of pain, the ALJ must keep in mind that

[a]n individual's statement as to pain ... shall not alone be conclusive evidence of disability ...; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain ... and which, when considered with all evidence required to be furnished under this paragraph ... would lead to a conclusion that the [claimant] is under a disability.

42 U.S.C.A. § 423(d)(5)(A).[6] This requirement of a medical basis for pain means that pain is at issue in a case when "the very nature of the medically-proven impairments makes the claim of disabling subjective symptoms seem inherently reasonable." *Rafael Rico v. Secretary of Health, Educ. & Welfare*, 593 F.2d 431, 433 (1st Cir.), *cert. denied*, 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979). Once pain is at issue, the ALJ must then evaluate it by considering all the evidence, both objective and subjective. *Id.*[7]

■ In *Miranda v. Secretary of Health, Educ. & Welfare*, the Court of Appeals noted that "[p]ain is not easily diagnosed, and the Secretary is not at the mercy of every claimant's subjective assertions of pain. But while pain is 'subjective,' clinical techniques may shed some light on the probability of its existence, magnitude and disabling effect." 514 F.2d 996, 1000 (1st Cir.1975). However, the Secretary may not disregard a claimant's allegations of pain simply because the claims cannot be substantiated by medically acceptable clinical and laboratory techniques. *Nelson v. Heckler*, 712 F.2d 346, 348 (8th Cir. 1983) (citations omitted). Rather, the Secretary must consider all available evidence, including the claimant's work history, corroborative testimony, efforts to seek relief for the pain, and, of course, the objective medical evidence. *Id.* In rendering a decision, the ALJ may discount subjective complaints such as pain where there are inconsistencies in the entire record. *Underwood v. Bowen*, 807 F.2d 141, 143 (8th Cir.1986). And although the claimant's subjective testimony may be rejected, the ALJ must make specific credibility findings to do so. *See, e.g., Rafael Rico*, 593 F.2d at 433; *Thompson v. Califano*, 556 F.2d 616, 617 n. 2 (1st Cir.1977).

### c. Evaluation of the Evidence by the ALJ

In considering Mr. Cashman's request for benefits prior to March 31, 1984, the ALJ and Appeals Council had the reports of several doctors before them. However, the records of the various doctors in this case reveal some conflicting evidence as to the extent of Plaintiff's alleged disability prior to March 31, 1984.[8]

Mr. Cashman was examined by Dr. Henry Smith, a neurosurgeon, on February 9, 1981. In addition to eliciting a history and description of Mr. Cashman's symptoms and daily activities, Dr. Smith preformed a physical examination. The doctor concluded that Mr. Cashman was probably suffering from a conversion disorder rather than from any organic disease involving either peripheral neuropathy or nerve root compromise.[9]

---

light of his age, education and work experience. The claimant will be entitled to benefits only if he is not able to perform this other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

**6.** Objective evidence of pain is also required under the Social Security regulations. 20 C.F.R. § 404.1529 (1992) states that all symptoms, including pain, must have medical signs and laboratory findings which reveal the existence of a medical condition which could reasonably be expected to produce the symptoms or pain.

**7.** The First Circuit has also held that in the absence of objective findings supporting a claim

of pain, "the adjudicator is to obtain detailed descriptions of daily activities" in order to establish disability. *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 23 (1st Cir.1986).

**8.** The Supreme Court has noted that conflicting medical evidence is not an uncommon situation in these cases. *Richardson*, 402 U.S. at 399, 91 S.Ct. at 1426.

**9.** A conversion disorder (also referred to as "conversion reaction" or "conversion hysteria") is a condition where even though a patient claims to experience a specific symptom, the symptom has

Mr. Cashman was then examined by Dr. Irwin Goldstein, a psychiatrist, on March 12, 1981. After performing a mental status examination, Dr. Goldstein felt that Mr. Cashman was suffering from "Compensation Neurosis or Conversion Reaction." With respect to Plaintiff's work-related functioning, Dr. Goldstein stated that Mr. Cashman would have no more than minor problems except in dealing with ordinary work pressure or working around machinery.

On July 28, 1981, Dr. A. Jerome Philbin, an orthopedic surgeon, examined the Plaintiff. In addition to concluding that Mr. Cashman had "no meaningful objective deficits," Dr. Philbin could not "even make a diagnosis of a low back strain with the patient's presentation so grossly exaggerated." Tr. at 218.

In March, 1982, Dr. Wayne Miller claimed to have seen Mr. Cashman "on several occasions." Dr. Miller stated that Plaintiff was "totally disabled from employment" as a result of severe low back pain.

On April 22, 1982, Dr. Smith again examined Mr. Cashman. From this second examination, the doctor concluded that Mr. Cashman was suffering from no objective neurological impairment. In addition, x-rays of the lumbosacral spine showed no abnormalities of any kind.

On January 4, 1983, Dr. Joseph Mathew certified to the Massachusetts Department of Public Welfare ("DPW") that Mr. Cashman was unable to perform full-time gainful work because of "chronic low back syndrome."

Dr. Robert Germann treated Mr. Cashman from October 26, 1983 to January 16, 1984. Dr. Germann concluded that Mr. Cashman's apparent muscle weakness was "probably not real." Tr. at 149. In addition, Dr. Germann conducted a CT scan of the lumbar spine which yielded "completely normal" results. *Id.* Given that an electromyography had shown "some evidence of a polyneuropathy," Dr. German believed that Mr. Cashman's complaints were probably not the result of a disc herniation.

Mr. Cashman asserts that since the accident in 1980, he has experienced disabling pain in his lower back and leg, and discomfort in his left arm and shoulder. He contends that as a result of the accident, he has been unable to engage in any substantial gainful activity since January 8, 1980. At the administrative hearing before the ALJ, Mr. Cashman testified that his condition has worsened over the years. However, not only did Mr. Cashman not testify in any detail to his condition prior to March 31, 1984, neither he nor his wife testified with specificity as to his daily activities at that time.

In support of the conclusion that Mr. Cashman was not disabled within the meaning of the Act prior to March 31, 1984, the ALJ cited Plaintiff's residual functional capacity, age, education and work experience. Specifically, ALJ held that:

[p]rior to March 31, 1984, [Mr. Cashman's] description of constant and incapacitating pain and limitation of motion was not supported by substantial objective medical evidence or by the conclusions of independent consultant examining physicians. Regarding that period, his allegations are not reasonably consistent with the medical signs and findings of record nor can they be found to be convincingly additive so as to constitute a credible basis for disability unsupportive by the objective evidence....

Prior to March 31, 1984 [Mr. Cashman] had the residual functional capacity to perform the physical exertional requirements of work except for the ability to lift or carry more than 10 pounds; to stand or walk for more than 2 hours in an 8 hour day; to perform frequent bending, etc....

Prior to March 31, 1984 [Mr. Cashman] had the residual functional capacity to perform the full range of sedentary work....

Tr. at 22.

Regarding the conclusions reached by Drs. Miller and Mathew, the ALJ found that the "[c]haracterizations of the claimant as 'totally disabled' by treating and evaluating physicians prior to March 31, 1984 were, without

---

no physical or biological origin; the symptom is due to psychological and emotional factors, not a

physical illness.

exception, made in the context of establishing his eligibility for state General Relief (DPW) benefits; furthermore, Dr. Miller, who signed several of these reports, admitted that he had seen the claimant less than once a year since 1981." Tr. at 19. And, as the ALJ noted in his decision, the "definition of disability set forth in the Social Security Act, as amended, ... [is] markedly different from that used for both General Relief (DPW) and Industrial Accident benefits." *Id.*

As for Mr. Cashman's specific allegations of pain, the ALJ found that:

[t]he discrepancies between his allegations (and the conclusory statements of some of his treating physicians) and the objective medical record (supported by the assessments of the independent consultant examining neurosurgeon and by the claimant's own expert consultants) cannot be resolved in the claimant's favor based on this record.

*Id.* Moreover, based on the record and testimony of both witnesses, the ALJ found that prior to March 31, 1984, Mr. Cashman's allegations of severe pain did not significantly interfered with his ability to maintain concentration and attention so as to constitute a separate and additional nonexertional impairment.

Remarking on the relationship between Mr. Cashman's medical history and ultimate findings of disability, the ALJ found that there were considerable gaps in Mr. Cashman's medical treatment, including a period of nearly a year in 1980–1981. As noted, Dr. Miller saw Mr. Cashman only three times in four years. However, the doctor certified the claimant to the DPW as unable to work on two occasions and, once, characterized

him as "totally disabled from employment" in a report to the Massachusetts Rehabilitation Commission. *Id.* Dr. Germann's finding that Mr. Cashman's symptoms were secondary to diabetic polyneuropathy were based partly on an electromyogram which was not in the record before the ALJ and partly on the claimant's "unconvincing" and "unreal" presentation on examination. In short, the ALJ found "nothing in [Dr. Germann's] report or in any other medical assessment in this record supports a conclusion that the claimant was unable to perform a full range of sedentary work prior to March 31, 1984." *Id.*

As for the claim that Mr. Cashman suffered from a severe psychiatric impairment, the ALJ found no substantial evidence in the record to support such a conclusion. The existence of "conversion reaction," as suggested by Drs. Smith and Goldstein, was never confirmed by any objective medical evidence. As the ALJ noted, Mr. Cashman has neither undergone psychotherapy, nor has he been specifically diagnosed as suffering from a mental illness by any treating physician. *Id.*

With respect to the ALJ's finding that Mr. Cashman possessed residual functional capacity prior to March 31, 1984, Dr. Zumwalt, a non-examining consulting physician, indicated that Mr. Cashman could lift (including upward pulling) and/or carry up to twenty pounds; that he could lift and/or carry up to ten pounds frequently; that he could stand and/or walk about six hours (in an eight hour day), and that he could sit for approximately six hours (in an eight hour day). Tr. at 70–71.[10]

---

10. There has been considerable debate as to the amount of weight to be given reports of non-examining medical advisors. *See, e.g., Richardson,* 402 U.S. at 408, 91 S.Ct. at 1430–31 (the Supreme Court noted that the use of a medical advisor is neither unconstitutional nor improper but it was unclear as to whether such testimony could constitute substantial evidence); *Guzman Diaz v. Secretary of Health, Educ. & Welfare,* 613 F.2d 1194, 1199 n. 7 (1st Cir.1980) (the question of whether the report of a non-examining medical advisor can constitute substantial evidence "will doubtlessly vary with the circumstances, including the nature of the illness and the information provided to the expert"); *Browne v. Rich-*

*ardson,* 468 F.2d 1003, 1006 (1st Cir.1972) (the report of a non-examining, non-testifying doctor "lacks the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination").

It is clear, however, that the report of a non-examining medical advisor should not be considered irrelevant. *Rodriguez,* 647 F.2d at 223–24. As the First Circuit noted in *Rodriguez,*

the fact that the experts have neither examined nor testified lessens the probative power of their reports. But the facts [sic] that the experts received extensive documentation con-

### d. Substantial Evidence

■ While the Secretary cannot ignore a doctor's determination of disability, she is not bound by it. *Gray v. Heckler*, 760 F.2d 369, 375 (1st Cir.1985); *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982); *Rodriguez*, 647 F.2d at 222.

■ The First Circuit has stated that in reviewing the administrative record for substantial evidence, the court should "keep in mind that '[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.'" *Rodriguez*, 647 F.2d at 222 (*quoting Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir.1965)); *Ortiz*, 955 F.2d at 769. And although the Secretary is required to consider medical evidence when arriving at eligibility determinations, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Secretary], not for the doctors or for the courts." *Rodriguez*, 647 F.2d at· 222 (citing *Richardson*, 402 U.S. at 399, 91 S.Ct. at 1426; *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir.1975) (per curiam)); *Ortiz*, 955 F.2d at 769. Indeed, "[a] treating physician's conclusions regarding total disability may be rejected by the Secretary especially when ... contradictory medical advisor evidence appears in the record." *Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271, 276 (1st Cir.1988) (citing *Sitar*, 671 F.2d at 22).

■ In addition, subjective symptoms of pain must be evaluated with due consideration for credibility, motivation and medical evidence of impairment. *See Gray*, 760 F.2d at 374. As such, any ambiguity on the issue of pain is left for the Secretary, based on her "overall evaluation of the claim including [claimant's] credibility, to rule one way or the other." *Miranda*, 514 F.2d at 1000. Here, the ALJ determined that Mr. Cashman's claims of disabling pain and other ailments prior to March 31, 1984, were neither credible nor substantiated by objective medical evidence.

The record makes clear that there was enough relevant evidence in this case to support the conclusion of the Secretary. *See Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427. There is enough evidence that would allow a reasonable person to conclude that prior to March 31, 1984, Plaintiff's ailments were not, individually or in combination, equivalent to the disabling conditions contained in the Secretary's listings. *See Rodriguez*, 647 F.2d at 222.

## VI. CONCLUSION

Having conducted a review of the record as a whole pursuant to 42 U.S.C.A. § 405(g), this Court finds that the Secretary's conclusion that Mr. Cashman was not disabled within the meaning of the Social Security Act prior to March 31, 1984, is supported by substantial evidence. Accordingly, Plaintiff's request for an order reversing the Secretary's decision is *DENIED*. The final decision of the Secretary of Health and Human Services is *AFFIRMED*.

**SO ORDERED.**

---

taining relevant information, that they were highly qualified, that they reviewed the record, that they confined themselves to expressing an opinion about "equivalency" on the basis of the clinical reports before them ... militate in favor of according their reports some evidentiary value.

*Id.* at 224 (footnote omitted). In the face of conflicting testimony between the claimant's personal physicians and the non-examining medical advisor, the Secretary has the authority to resolve the matter. *Tremblay v. Secretary of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir.1982) (citing *Richardson*, 402 U.S. at 399, 91 S.Ct. at 1426).