St. Arnault v. Secretary,HHS          CV-94-261-L    08/03/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Gerard St. Arnault


     v.                                         #C-94-261-L

Donna Shalala, Secretary
 Health & Human Services

## ORDER


     Plaintiff, Gerard St. Arnault, seeks review, pursuant to 42 U.S.C. § 405(g), of a final determination of the Secretary of Health and Human Services (HHS) denying his application for Social Security benefits.  Now for the court's consideration is plaintiff's motion (document no. 5) for order reversing the decision of the Secretary.  For the reasons set forth below, plaintiff's motion is granted.


BACKGROUND

     Mr. St. Arnault is a forty-year-old male with approximately eight years of formal school education.  His past relevant work experience includes that of a commercial painter.

     On April 17, 1989, plaintiff fell from a ladder while on the job, causing fractures to both bones in his right ankle.  Immediately following the accident, plaintiff underwent surgery to replace the shattered bones with pins and screws.  The surgery

was successful and Mr. St. Arnault was discharged four days later with his ankle in good alignment. Upon discharge, plaintiff wore a cast to be kept on for three weeks. He was given non-weight bearing crutches for ambulation and prescribed Tylenol #3 (with codeine). Plaintiff was told at the time that post-traumatic arthritis would probably develop and that fusion surgery would probably be necessary.

Plaintiff underwent surgery a second time to have some of the pins removed. After the pins were removed by his doctor, plaintiff's ankle was bandaged and he was required to use crutches to move. Due to his continued episodes of pain, plaintiff repeatedly went back to his doctors for consultation.

In July, 1990, Mr. St. Arnault underwent surgery for a third time to address an arthritic condition in his ankle. Following this surgery, plaintiff was placed back in a cast. He continued to take Tylenol 3 with codeine for the pain.

After the cast was taken off, sometime around November, 1990, plaintiff began with a regimen of physical therapy. However, although Mr. St. Arnault testified that the physical therapy did improve his physical condition, the therapy was discontinued in December, 1990. Subject to additional training or therapy in 1992, plaintiff was able to perform limited work that involved sitting for a few hours at a time and standing for

2

a few hours at a time.

On March 2, 1993, plaintiff consulted with Dr. James Shea, and reported complaints of pain in his right ankle. Following this consultation, Dr. Shea noted the "fusion healed up well but he (plaintiff) is left with persistent pain and limp that is aggravated by standing and walking and relieved by rest."

On January 21, 1993, the plaintiff filed an application for disability and for Supplemental Security Income (SSI), alleging an inability to work since April 17, 1989. The applications were denied initially and again on reconsideration by the Social Security Administration. An Administrative Law Judge (ALJ), before whom the plaintiff, his attorney, and a vocational expert appeared, considered the matter de novo and on January 28, 1994, issued a decision. The ALJ concluded that the plaintiff was not entitled to either disability or SSI benefits. On April 21, 1994, the Appeals Council denied plaintiff's request for review, thereby rendering the administrative decision, dated January 28, 1994, the final decision of the Secretary of Health and Human Services, subject only to judicial review.

Plaintiff now contends that the Secretary's decision is not supported by substantial evidence. Specifically, plaintiff maintains that objective medical evidence from Dr. Weiner and Dr. Shea report the existence of ankle injury and incapacity; sub-

3

jective evidence of pain is prominent throughout plaintiff's testimony; and the testimony of the vocational expert indicates the plaintiff's condition prevents plaintiff from performing suggested sedentary jobs.

DISCUSSION

An individual seeking social security disability benefits will be considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A) (Supp. V 1981); 42 U.S.C. § 1382c(a)(3)(A) (1976); see Faford v. Shalala, 856 F. Supp. 13, 15-16 (D.Mass. 1994). The Secretary of Health and Human Services will find a claimant disabled only if the claimant's

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (1994).

The Secretary utilizes a five-step sequential evaluation,

4

set forth in 20 C.F.R., Ch. III, §§ 404.1520 and 416.920, in considering disability claims. This five-step procedure is summarized as follows: First, the Secretary determines whether the claimant is currently involved in substantial gainful activity. If the claimant is currently involved in substantial gainful activity, the inquiry stops and the claimant is adjudged not disabled. 20 C.F.R., Ch. III, § 404.1520. If the claimant is not so involved in substantial gainful activity, the Secretary considers whether the claimant has a "severe impairment" which dramatically hinders his physical or mental ability to engage in basic work activities. Id. The claimant must prove that his impairment prevents him from performing his former type of work. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary, 690 F.2d 5, 7 (1st Cir. 1975)). The scheme of the Act places a very heavy initial burden on the claimant to establish the existence of a disabling impairment. Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of HHS, 944 F.2d 1, 5 (1st Cir. 1991). The claimant is not required to establish a doubt-free claim; the initial burden is satisfied by the usual civil standard, a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D.Mass 1982); see also 1 Unemployment Insurance Reporter (CCH) 12, 679 (April 15, 1985). Further, the claimant must show a

5

"medically determinable" impairment, and only in a rare case can this be shown without medical evidence.  Thompson v. Califano, 556 F.2d 616, 618 (1st Cir. 1977) (citing 42 U.S.C. § 423(d) (1)(A)); Ramirez v. Secretary of Health, Education and Welfare, 528 F.2d 902, 903 (1st Cir. 1976).

If the claimant suffers from a severe impairment, the third inquiry is whether, based exclusively on medical evidence, the claimant has an impairment which (1) meets the twelve month durational requirement and (2) is listed in Appendix 1 of the regulations.  20 C.F.R., Ch. III, § 404.1520.  If the claimant has an impairment listed in Appendix 1, the Secretary will consider him disabled without evaluating vocational factors such as age, education, and work experience.  Id.  The Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

In the event that a claimant does not have an impairment specifically listed in Appendix 1, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Id.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work existing in the economy which the claimant can perform.  Id.; Vazquez v. Secretary of Health and Human Services, 683 F.2d 1 (1st Cir.

6

1982).  If the Secretary shows the existence of such jobs, then the overall burden remains with the claimant.  Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a claim for disability, the Secretary shall consider objective and subjective factors, including the following:  (1) objective medical facts; (2) the claimant's subjective evidence of pain and disability as testified to by the claimant and other witnesses; and (3) the claimant's educational background, age and work experience.  See e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986); Goodermote, 690 F.2d at 6.

A finding by the Secretary that a claimant has not shown disability is conclusive if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is:

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939).  This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

Consolo v. Federal Maritime Com., 383 U.S. 607, 620 (1966)

(citations omitted).

Although it is for the Secretary to weigh and resolve conflicts in the evidence, <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)), the court is empowered to scrutinize the record as a whole and determine the reasonableness of the decision. <u>Ortiz</u>, 955 F.2d at 769. Upon review, a court must be content that the claimant has had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." <u>Gold v. Secretary of Health, Education and Welfare</u>, 463 F.2d 38, 43 (2d Cir. 1972); <u>Hankerson v. Harris</u>, 636 F.2d 893, 895 (2d Cir. 1980).

With the above principles in mind, the court reviews plaintiff's motion to reverse the decision of the Secretary.

In considering the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920, it is apparent that at the time of the administrative hearing, December 14, 1993, Mr. St. Arnault was currently engaged in substantial gainful activity. However, Mr. St. Arnault requested an award for a closed period of disability from April 17, 1989 to June 19, 1993. The ALJ correctly conceded that "the claimant is entitled to have his claim adjudicated further through the sequential evaluation process even though he is presently engaging in substantial

8

gainful activity." Tr. 14.

The ALJ also correctly determined that Mr. St. Arnault suffered from a severe impairment as defined within the context of the Social Security regulations. This determination was supported by evidence establishing that Mr. St. Arnault had been diagnosed with chronic traumatic degenerative arthritis of the right ankle secondary to fracture of the right ankle. Tr. 14-15. Irrefragably, this condition significantly limited Mr. St. Arnault's ability to perform the physical functions or work defined in 20 C.F.R. §§ 404.1521(b)(1) and 416.921(b)(1). Therefore, reviewing the evidence and arguments presented, the court opines the ALJ's conclusions at step one and step two of the sequential evaluation are supported by substantial evidence.

In continuing with his evaluation, the ALJ next considered whether Mr. St. Arnault's impairment meets or equals the severity of impairments listed in Appendix 1 to Subpart P of the Social Security regulations.

The purpose of the listing of impairments in Appendix 1 is to describe for each of the major body systems,

> impairments which are considered severe enough to prevent a person from doing any gainful activity. Most of the listed impairments are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.

9

20 C.F.R. §404.1525(a).

If a claimant's condition qualifies as an impairment noted in Appendix 1, the Secretary shall automatically make a finding of "disabled" without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d). Should the ALJ find a claimant disabled at step three, the inquiry ends without continuing on to steps four and five.

Notably, at step three of the evaluation, a plaintiff, in order to establish entitlement to benefits under the Social Security Act, bears the burden of proof in establishing that he meets or equals the listing requirements. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).

In reviewing the administrative record in the case at hand, the court concludes the ALJ's decision, at step three of the evaluation, is not supported by substantial evidence. Succinctly, Mr. St. Arnault's condition did meet the requirements of impairments within the listing. Apposite to this conclusion, Mr. St. Arnault's condition reflected the requisite limitations involving range of motion, condition of the musculature, sensory or reflex changes, and X-ray abnormalities.

Following examination of the administrative record, there appears to be a plethora of instances where medical reports

discuss the severity of Mr. St. Arnault's condition.  Also, the disability forms submitted by Mr. St. Arnault reflect the degree of Mr. St. Arnault's condition.  Thus, it is troubling to the court that Mr. St. Arnault, on repeated instances, brought to the attention of the ALJ and Social Security Administration, the magnitude of the effects of his impairment and yet the impairment was not considered or evaluated within the context or purview of the listing of impairments found in Appendix 1.  Tr. 78, 82-83, 91, 102, 125-126, 142-143, 157, 160, 174, 185-186, 206, 218. Rather, the ALJ merely determined that "the severity of the claimant's diagnosed impairment of chronic traumatic degenerative arthritis of the right ankle secondary to fracture and arthrodesis of the right ankle [did] not meet the level of severity listed in Section 1.11."  Tr. 15.  However, the court notes two listed impairments that should have been more fully considered by the ALJ and which directly bear on Mr. St. Arnault's claim for disability.

The first, § 1.03 (Arthritis of a major weight-bearing joint), provides that a claimant will be disabled if he has a

> history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination.  With:
> A.  Gross anatomical deformity of hip or knee (e.g, subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk or stand;

11

    or

    B. Reconstructive surgery or surgical arthrodesis of a
    major weight-bearing joint and return to full weight-bearing
    status did not occur, or is not expected to occur, within 12
    months of onset.

20 C.F.R., Ch. III, Pt. 404, Subpt. P, App. 1, § 1.03 (1994).


The ALJ, in the case at hand, did not discuss this provision in his finding. However, the court concludes that Mr. St. Arnault's condition, during the time period in question, likely rose to a level of severity as that provided § 1.03. Relevant to this determination, the record provides indications of the severity of Mr. St. Arnault's arthritic condition and also contains medical reports and evaluations with indicate that Mr. St. Arnault did not return to "full weight-bearing status . . . within 12 months of onset." Tr. 125-126, 241, 245, 249-250. 20 C.F.R., Ch. III, Pt. 404, Subpt. p., App. 1, § 1.03(B). Further, the record reflects that in July, 1990, Mr. St. Arnault was "hospitalized again and underwent a surgical procedure on [his] right ankle due to severe traumatic arthritis." Tr. 126. Therefore, due to the arthritic complications that arose for Mr. St. Arnault, the ALJ improperly failed to consider and evaluate Mr. St. Arnault's condition within the context of § 1.03.

The second listed impairment which is pertinent to Mr. St. Arnault's condition is § 1.11. The section encompasses

12

conditions resulting from fractures of the femur, tibia, or tarsal bone of the pelvis.

When Mr. St. Arnault's conditions is compared to the impairment listed in § 1.11, it is evident to this court that Mr. St. Arnault should have been considered disabled. Succinctly, based on the medical reports and evaluations offered, Mr. St. Arnault's condition was substantially similar to the condition noted in § 1.11 of the regulations. § 1.11 provides that a claimant will be considered disabled if he has a

> [f]racture of the femur, tibia, tarsal bone or pelvis
> with solid union not evident on X-ray and not
> clinically solid, when such determination is feasible,
> and return to full weight-bearing status did not occur
> or is not expected to occur within 12 months of onset.
> 20 C.F.R., Ch. III, Pt. 404, Subpt. P, App. 1, § 1.11 (1994).

In Mr. St. Arnault's situation, his accident resulted in a comminuted fracture of the distal right tibia-fibula at the ankle. By definition, Mr. St. Arnault's condition equalled the impairment listed in § 1.11. The medical records indicate that Mr. St. Arnault's accident resulted in severe shattering of his tibia/fibula thereby causing a fragmentation of various weight bearing bones. Tr. 233. He also had the requisite damage to a weight bearing joint (ankle) with solid union not evident.

In considering Mr. St. Arnault's condition, reports from Drs. John M. Sherwin and Gerald H. Weiner indicate the magnitude

13

of Mr. St. Arnault's fracture.  Tr. 233, 249.  For example, a variety of pins and screws had to be utilized for replacement and restructuring of the fragmented joint and bones.  Tr. 233. Additionally, due to such comminution or fragmentation, Dr. Sherwin's impression was that Mr. Arnault would likely experience "post traumatic degenerative osteoarthritis."  Tr. 232. Likewise, reports prepared by Drs. Stanley Fons and Thomas Lally indicate the degree of the procedures used to reconstruct the damage caused to Mr. St. Arnault's ankle.  Tr. 235-236.  Based on these medical impressions, the ALJ's determination that "the claimant's diagnosed impairment of chronic traumatic degenerative arthritis of the right ankle secondary to fracture and arthrodesis of the right ankle does not meet the level of severity listed [in the listing of impairments]" is not supported by substantial evidence.

In considering the durational requirement pertinent to § 1.11, the record also reflects that Mr. St. Arnault's condition did not improve within a 12 months period from the date of onset. A report dated January 22, 1990, eight months after the initial injury, indicates the continued severity of Mr. St. Arnault's injury.  Succinctly, the report, prepared by Dr. Sherwin, states that Mr. St. Arnault's ankle is gradually healed but X-rays indicate "some anterior osteophytes."  Tr. 239.  The report

14

further indicates that Mr. St. Arnault's "time out is not surprising. He certainly has been legitimately disabled since the injury of April 17th, 1989." Id.

In progressing with the determination of disability time experienced by Mr. St. Arnault, the court also notes two reports, dated May 23, 1990 and June 8, 1990, drafted by Dr. Gerald H. Weiner. Tr. 250. The reports provide reasonable indications that in May and June of 1990, Mr. St. Arnault's condition was still of disability proportions. Id. Mr. St Arnault's condition was such that he was taken to the operating room for arthroscopy of his ankle and to have some metal fragments removed. Id. The arthroscopy revealed traumatic arthritic changes in the ankle. Id. Dr. Weiner also noted, on June 8, 1990, that Mr. St. Arnault was presently "not able to function in any type of activity that require[d] the use of his ankle such as standing, climbing, crawling, walking or carrying." Id.

Although there is little question that Mr. St. Arnault'scondition met a listed impairment and full-weight bearing status was not achieved within 12 months from the date of onset, the issue that remains is the duration of which Mr. St. Arnault is entitled to benefits. Upon examination of the medical records, it is apparent to the court that Mr. St. Arnault's condition continued to limit his functional capacity until early

15

1991.  This date is derived from a report compiled by Dr. John M.
Sherwin.  Tr. 241.  The report indicates that, as of March 6,
1991,  Mr. St. Arnault's ankle was solidly fused.  Id.  Dr.
Sherwin indicated that

> [h]e [(Mr. St. Arnault)] feels better at this point,
> now almost eight months post-ankle fusion.  On
> examination the ankle is fused.  He has a slight limp
> on gait.  He has good forefoot motion.  X-rays
> demonstrate a solid fusion.

Tr. 241.

Further, the report indicates that although Mr. St.
Arnault's stance and walk may have limitations, Dr. Sherwin's
medical opinion was such that he felt Mr. St. Arnault's condition
had improved to the point where rehabilitation could be performed
in order to get Mr. St. Arnault gainfully employed.  Id.
Therefore, based on progress reports submitted by the various
doctors, it is clear to the court that March 6, 1991 is a
reasonable date on which to conclude that Mr. St. Arnault's
condition had improved to the point where he no longer was
hampered by his impairment.

To recapitulate, based on a review of the medical evidence
presented in the administrative transcript, this court opines the
ALJ's determination, at step three of the sequential evaluation,
finding Mr. St. Arnault's condition not equal to a listed
impairment, is not supported by substantial evidence.  Further,

16

due to the injury, full weight-bearing status did not occur within twelve months from the date of onset. The record indicates that Mr. St. Arnault's condition restricted him from full weight bearing status from April 17, 1989 until March 6, 1991. Therefore, based on the completeness of the evidence within the administrative record, the case is properly reversed.

Finally, subject to the ALJ's misstep at step three of the evaluation and the derivative reversal stemming from that misjudgment, the court need not consider the determinations made at step four and step five of the sequential evaluation.

CONCLUSION

For the reasons stated previously, plaintiff's motion to reverse the decision of the Secretary (document no. 5) is granted. The Secretary's decision is reversed, and the case is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for the limited purpose of awarding benefits to Mr. St. Arnault in the appropriate amount for the period of disability commencing April 17, 1989 and terminating March 6, 1991. The court will enter judgment accordingly.

August 3, 1995

_____
Martin F. Loughlin
Senior Judge

Vincent A. Wenners, Esq.
David L. Broderick, Esq.

17