Maria COSTA

v.

Michael J. ASTRUE, Commissioner
Social Security Administration.

Civil Action No. 05–12144–RGS.

United States District Court,
D. Massachusetts.

July 17, 2008.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Defendant.

James J. Gannon, Morris Greenberg, Maria L. Nunez, Green & Greenberg, Providence, RI, for Plaintiff.

*MEMORANDUM AND ORDER ON APPELLEE'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER AND APPELLANT'S MOTION TO REMAND*

STEARNS, District Judge.

Maria Costa seeks review of a final decision of the Commissioner of Social Security that she is not disabled as defined by the implementing regulations of the Social Security Act (Act). *See* 20 C.F.R. § 404.1520(f). The Commissioner determined that while Costa is unable to resume her prior occupation as a home care nurse, she is able to perform less physically demanding work. The issue on appeal is whether substantial evidence supports the Commissioner's decision that Costa was not disabled as of her last insured

date, December 31, 1998. Costa sought review of the Commissioner's decision in the district court pursuant to 42 U.S.C. § 405(g), after her application, motion for reconsideration, and request for review by the Appeals Council were successively denied.[1] A hearing on Costa's appeal was held on June 8, 2008.

## BACKGROUND

As of her last insured date, December 31, 1998, Costa was thirty-eight years old.[2] She has a GED. She lives with her husband and three children. Costa was employed as a home health aide between 1986 and 1993. She left her job on November 11, 1993, after a work-related injury to her neck and shoulder.[3] She is presently unemployed.

In August of 2002, Costa filed this application for Disability Insurance Benefits (DIB), alleging a disability as of November 11, 1993, resulting from migraine headaches, disc disease in her neck, and depression.[4] On October 20, 2004, ALJ Barry Best heard testimony from Costa (who was represented by counsel), and from Stephen Sachs, a vocational expert (VE). On April 14, 2005, the ALJ held a supplemental hearing at which testimony was taken from Robert McGinn, another VE. On July 25, 2005, the ALJ issued a written decision in which he found that Costa could perform work that did not require the lifting or carrying of more than ten pounds, moving her neck more than half the normal range of motion, and with "moderate" requirements of attention and concentration.

## Medical Evidence

Costa testified that she has recurrent, worsening migraine headaches "every day." Two or four days a week, the headaches require her to lie down in a darkened room for "a couple of hours." She also complains of ongoing pain resulting from injuries to her neck, shoulder, and back. She suffers from anxiety and cries uncontrollably on a daily basis. She also has significant attention deficits.

The ALJ noted that while insured:

Costa periodically consulted treating neurosurgeon, David DiSanto MD, from September 1991 through October 1998 for right-sided neck pain radiating into the right should/arm and "constant ... tension" headaches, with localized tenderness noted on physical examinations, secondary to diagnosis of cervical C5–C6 disc protrusion/"mild" radiculitis "with-

---

1. The denial of review by the Appeals Council affirmed the decision of the Administrative Law Judge (ALJ) as that of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.958.

2. Under Title II of the Act, Costa must show: (1) a disability beginning on or before her last insured date; and (2) that she remained disabled at least through August of 2001, twelve months prior to her application for benefits.

3. Costa attempted to return to work for a "few months" in 2000 and 2001 as a home health aide "activities assistant," but stopped work after suffering from headaches and a work-related injury. She earned $989.45 in 2000, $3,860.57 in 2001, and nominal amounts in 1994 and 1995. Costa's treating physician, Dr. David DiSanto, noted that in

May of 1998, Costa was "doing light duty work." However, the record discloses no earnings by Costa for the year 1998.

4. A prior application for DIB was filed by Costa on October 22, 1997, alleging disability as of November 11, 1993, secondary to disc disease of the neck and migraine headaches. The application was denied at the initial determination on December 11, 1997, and was not appealed further. The decision that Costa was not disabled as of December 11, 1997, is therefore final and binding. *See* 20 C.F.R. §§ 404.987–404.988. The issue in this case is whether Costa can demonstrate an onset of disability after December 11, 1997, and before the expiration of her insured status on December 31, 1998.

out neurological deficit" accompanied by "tension" headaches (caused by multiple work-related injuries) which were treated conservatively with medications and nerve blocks. In fact, Dr. DiSanto noted between May and July 1998 that the medication Esgic seemed to "alleviate" her headaches to the point where she actually could "continue ... doing light duty" work with only "partial disability status." Indeed, Dr. DiSanto consistently concluded that the claimant was only "partially" disabled and capable of "light duty" work with a lifting restriction of "20–25 pounds" which was subsequently scaled down to "5–10 pounds" during this entire period. A lumbar MRI taken in May 1992 showed only "mild ... small" disc "bulge(s)" at the L3–L4 and L4–L5 levels with only a "question" of scoliosis. A brain MRI administered in October 1997 was entirely "unremarkable."

After the expiration of her insured status, Costa continued to consult with Dr. DiSanto, complaining of headaches, neck pain, and "exquisite" tenderness because of a C5–C6 disc herniation. Through 2000 and 2001, Dr. DiSanto continued to opine that Costa was partially disabled. In October of 2004, Dr. DiSanto noted that Costa's moderate neck and arm pain precluded the sustained concentration required for full-time employment. He stated that she was incapable of prolonged and significant lifting, carrying, sitting, standing, walking, bending, squatting, kneeling, and crawling.

From May through October of 2001, Costa worked as an activities assistant, a job that required the frequent lifting of twenty-five pounds and the occasional lifting of fifty pounds. In October of 2001,

Costa incurred another work-related injury.[5] Costa testified that she stopped working because of her chronic headaches.

Costa's attorney arranged for her to see Dr. Lucille Frieder, a psychologist, in August of 2002. Dr. Frieder diagnosed Costa with severe major depression with an onset date in 2000 (at the earliest). She also ascribed Costa's complaints of appetite and sleep disorders to her migraine headaches. In Dr. Frieder's opinion, the depression caused "moderately severe" to "severe" functional limitations in Costa's ability to concentrate, to carry out daily activities, and to cope with workplace pressures. Except for Dr. Frieder's diagnosis, there is no indication in the medical record that Costa had previously suffered from depression or any other psychological ailment.

In September of 2004, Dr. DiSanto opined that Costa was totally disabled. He completed a physical capacity evaluation in which he determined that she could lift and carry only up to ten pounds occasionally. Although he concluded that Costa could not combine sitting and standing for any length of time, he believed that she could sit for one or two hours at a time, stand without restriction, and walk steadily for one or two hours. He also stated that she was not capable of full-time sustained employment.

*THE ALJ'S DECISION*

The ALJ's findings were as follows:

1. The claimant met the disability insured status requirements of Title H of the Act on November 11,1993, the date the claimant stated she became unable to work, and continue[d] to meet them through December 31, 1998.

---

5. Costa received total disability payments for three months and partial disability payments for an additional month after the injury.

2. The claimant has not engaged in substantial gainful activity since November 11, 1993.

3. The medical evidence establishes that the claimant has "severe" cervical degenerative disc disease and headaches; but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The severity of pain and degree of incapacity alleged by the claimant is exaggerated and not credible.

5. The claimant has the residual functional capacity to perform the exertional and non-exertional requirements of work except for an inability to lift/carry greater than 10 pounds; an inability to move the neck more than half the normal range of motion; and a "moderate" reduction in maintaining attention/concentration (20 C.F.R. § 404.1545).

6. The claimant is not capable of performing her past relevant work as a home health aide.

7. The claimant was 38 years old (as of her date last insured), which is defined as a younger person (20 C.F.R. § 404.1563).

8. The claimant has the equivalent of a high school education (20 C.F.R. § 404.1564).

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 C.F.R. § 404.1568).

10. Based on an exertional capacity for sedentary work, and the claimant's age, education and past work experience; Section 404.569 and Rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11. Although the claimant's additional non-exertional limitations do not allow her to perform the full range of sedentary work, using the above cited Rule as a framework for decision making, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs include: bench worker, sorter, carder, boxer, stringer, linker, racker, assembler and packager. There are "tens of thousands" of such jobs, in the aggregate, in the Rhode Island, Massachusetts and Connecticut regional economy.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(f)).

## DISCUSSION

In evaluating a disability claim, an ALJ is required to follow the sequential step analysis prescribed by 20 C.F.R. § 404.1520. The ALJ must first determine whether a claimant was gainfully employed prior to the onset of the disabling condition. The ALJ must then determine whether the claimant suffers from a severe impairment limiting her ability to work. If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of Subpart P of the regulations, the claimant is presumptively deemed disabled. If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that her disability is sufficiently serious to preclude a return to her former occupation. *See Goodermote v. Sec'y of Health and Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982). Only if she meets that burden is the Commissioner at the fifth step obligated to prove that there are other jobs in the national economy that she could nonetheless perform. *See Gonzalez Perez v. Sec'y of Health, Educ. and Welfare*, 572 F.2d 886, 888 (1st Cir.1978).

 The findings of the Commissioner are conclusive so long as they are supported by substantial evidence and so long as the Commissioner has applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Manso–Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). "Substantial evidence ... means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence.... [The] question [is] not which side [the court] believe[s] is right, but whether [the ALJ] had substantial evidentiary grounds for a reasonable decision...." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998). The Commissioner's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The ALJ found at Step 1 and 2 of the sequential step analysis that Costa had not been gainfully employed since November 11, 1993, and that she suffered from impairments that were severe.

It is concluded that the claimant's cervical degenerative disc disease and headaches are "severe" impairments which have more than a minimal effect on her physical and mental ability to engage in basic work activity (20 C.F.R. § 404.1521 and Social Security Ruling 85–28). However, the claimant's severe impairments do not, either singly or in combination, meet or equal clinical requirements of Listing 1.04 or any other impairment found in the Listing of Impairments, Appendix 1, to Subpart P, of Social Security Regulations No. 4 (20 C.F.R. § 404.1525 and 404.1526).[6]

After determining at Step 3 that Costa's impairments did not equal a medical impairment listed in Appendix 1 of the regulations, the ALJ moved to Steps 4 and 5 of the analysis, both of which involve an assessment of a claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545. On appeal, Costa asserts that the ALJ erred in two principal respects. She argues: (1) that his RFC assessment was not supported by substantial evidence; and (2) that he failed to properly apply the pain evaluation/credibility criteria set out in *Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19 (1st Cir.1986).

 Costa claims that the ALJ had no basis for giving reduced weight to the opinions of Dr. DiSanto, her treating physician. She is particularly critical of the ALJ's conclusion that Dr. DiSanto's opinions had no relevance to the period prior to her last insured date. Dr. DiSanto, it will be recalled, opined that Costa was not capable of full-time sustained employment in 2004. The ALJ, however, gave "little or no probative weight" to Dr. DiSanto's 2004 opinion because "there is no indication that these restrictions relate back to the period prior to the expiration of insured status." The weakness in Costa's criticism is that the ALJ's RFC finding is fully supported by the medical records kept by Dr. DiSanto. Between May and July of 1998, Dr.

6. The ALJ found that Costa's neck disorder did not meet or equal the requirements of Listing 1.04 for disorders of the spine in the Listing of Impairments since she had no evidence of either nerve or root compression with neurological deficits, spinal arachnoiditis, or lumbar spinal stenosis, particularly during the period before her insured status expired on December 31, 1998. Costa's headaches did not meet or equal any of the neurological or neoplastic disease Listings since an MRI of her brain conducted in October of 1997 was "unremarkable." There is no indication in the medical record that Costa's depression existed at or near a level equal to Listing 12.04 prior to the lapse of her insured status on December 31, 1998.

DiSanto noted that the medication Esgic appeared to "alleviate" Costa's headaches to the point where she actually could "continue ... doing light duty" work with only "partial" disability status. As the ALJ noted:

> Dr. DiSanto consistently concluded that the claimant was only "partially" disabled and capable of "light-duty" work with a lifting restriction of "20–25 pounds" which was subsequently scaled down to "5–10 pounds" during the entire period.... In October 2004, Dr. DiSanto noted that the claimant's moderate neck and arm pain was significant enough to preclude sustained concentration and productivity which would be required by full-time employment.

When discounting Dr. DiSanto's 2004 opinion, the ALJ took into account the work-related injury Costa suffered in 2001, when she worked as an activities assistant. That job required frequent lifting of twenty-five pounds and the occasional lifting of fifty pounds. At trial, counsel suggested (and Costa testified) that she had stopped working in 2001 because of headaches she had begun experiencing in the early 1990s. In her Social Security Administration (SSA) Disability Report, however, Costa stated that she had left work in 2001 because she "got hurt again."[7] In addition, Dr. Saro Palmeri, an examiner for Massachusetts Disability Determination Services, reviewed Costa's medical records in June of 2003 and did an assessment of her RFC as of December 31, 1998. He concluded that Costa was capable of performing "light work" that did not require more than occasional climbing of ladders, ropes or scaffolds, stooping, crawling, or overhead reaching and concentrated exposure to extreme cold or vibration. It was the

prerogative of the ALJ to give weight to Dr. Palmeri's assessment.

■ Under SSA regulations, an ALJ is ordinarily to give "more weight" to treating physicians' opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2). That being said, the ALJ is not required to give a treating physician's opinion controlling weight. *See Arroyo v. Sec'y of Health and Human Servs.*, 932 F.2d 82, 89 (1st Cir.1991); *Rodriguez Pagan v. Sec'y of Health and Human Servs.*, 819 F.2d 1, 4 (1st Cir.1987). If the treating physician's opinion is inconsistent with other evidence in the record, the conflict is for the Commissioner—and not the court—to resolve. *See Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). This principle is of special force here where Dr. DiSanto's 2004 disability opinion is inconsistent with his earlier (and contemporaneous) treatment notes.

Costa also contends that the ALJ erred by not seeking further clarification from Dr. DiSanto because

> Ms. Costa complained of pain to Dr. DiSanto consistently during the years prior and subsequent to her date last insured. Dr. DiSanto frequently described Ms. Costa's pain as constant, exquisite and intracable. Yet the ALJ's analysis of the pain complaints and Ms. Costa's credibility was minimal at best.... The only reason given was that

---

**7.** ALJ Best appropriately noted that the October of 2001 injury occurred long after Costa's insured status expired in December of 1998.

Dr. DiSanto stated in his record that Ms. Costa's disability was partial or that she was capable of "light duty work." As stated above, it was not clear what Dr. DiSanto meant by those words and the ALJ simply assumed he meant full time work at a lower exertional level rather than part time work. It was an error to base his findings on an unfounded assumption.

Appellant Mem., at 11. SSA regulations caution against over-reliance on a medical expert's description of a claimant's exertional level in determining her capacity to work.

From time-to-time, medical sources may provide opinions that an individual is limited to "sedentary work," "sedentary activity," "light work," or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability. Adjudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.

SSR 96–5p. There is, however, no persuasive indication that the ALJ inappropriately disregarded Dr. DiSanto's opinions. Rather, the ALJ carefully reviewed the opinions of *all* of the medical experts, in addition to Costa's work history, medical records, and personal testimony.

 As to her second ground of alleged error, Costa asserts that the ALJ failed to apply the standards for pain evaluation and credibility judgments mandated by *Avery* and SSR 96–7p. *Avery* requires that the ALJ state specific reasons for finding a claimant not to be a credible witness. *See Da Rosa v. Sec'y of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986). "In determining the severity of a claimant's pain, 'the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility.'" *Makuch v. Halter*, 170 F.Supp.2d 117, 127 (D.Mass.2001), citing SSR 96–7p. If after evaluating the objective findings, the ALJ determines that the claimant's reports of pain are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ may consider other relevant information. *See Avery*, 797 F.2d at 23. Considerations capable of substantiating subjective complaints of pain include evidence of: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; and (5) any other factors relating to claimant's functional limitations and restrictions due to pain. *See id.* at 22; 20 C.F.R. §§ 404.1529, 416.929(c)(3)(I-vii).

Costa argues that the ALJ failed to properly evaluate the credibility of her subjective pain complaints. This is refuted by the ALJ's decision. In his opinion, he identified the *Avery* factors and stated that:

[a]lthough [Costa] clearly has a neck disorder and headaches which could reasonably be expected to cause some discomfort and resulting impairment, the intensity of the pain and the degree of incapacity asserted by the claimant are found to be inconsistent with the medical evidence of record, particularly for the period prior to the lapse of her insured status, for the reasons set forth below.

The ALJ then cited evidence from Costa's medical record relating to each of the *Avery* factors. He highlighted the fact that

> the claimant had worked prior to and after her alleged date of onset of disability despite her chronic headaches and neck/shoulder injuries. Furthermore, there is no indication in the medical record that the claimant's medications had caused any significant ongoing side-effects prior to the expiration of insured status. Indeed, the claimant's treating source has regularly noted that her headaches [were] controlled by both Egic and Fiorcet.

In his RFC assessment, the ALJ appropriately concluded that Costa was not disabled as of December 31, 1998,[8] and concluded that Costa was then able to perform at least light work with appropriate restrictions. His conclusion was based on the record as a whole, a consideration of the *Avery* factors, and a weighing of the 2004 opinion of Dr. DiSanto against his earlier opinions and treatment notes. (which he ultimately discounted as was his prerogative). The weight of the evidence lends substantial support to the ALJ's decision. It will therefore be affirmed.

### ORDER

For the foregoing reasons, Costa's motion to remand is *DENIED*. The Commissioner's cross-motion for an order of affirmance is *ALLOWED*.

SO ORDERED.

---

8. This date, the court must stress, is critical. The issue is whether Costa was disabled as of her last insured date, not whether she has become disabled since. Perhaps she has—on this issue the court expresses no opinion—but disability payments are awarded as an insurance benefit and not as an entitlement.